48132. CANTRELL v. STATE OF GEORGIA.

CLARK, Judge. For decision is an appeal by Cantrell, a state employee, whose employment with the State Forestry Commission referred to herein as employer was sought to be terminated by the employer through involuntary retirement on grounds of disability. For determination are: (1) Is there a conflict of jurisdiction of this matter between the Board of Trustees of the State Employees' Retirement System (for convenience referred to hereafter as Retirement Board) and the State Personnel Board? and (2) What medical procedure is to be followed for involuntary separation of a State employee who contests alleged disability?

In conformity with Code Ann. § 40-2505 (3) (b) as amended employer applied to the Retirement Board for Cantrell to be retired involuntarily by reason of his no longer being physically able to perform his duties. Request was made for a disability determination. Accompanying this request employer provided the Retirement Board with a job description, a statement from the employee's supervisor, and a written report from his personal physician. (As this physician's report is not a part of the record we do not know its contents.) This material was submitted to the Retirement Board's three-member Medical Board for their evaluation of his eligibility for disability retirement. Each of its three physicians recommended disability retirement but no personal physical examination was made of the employee by any of them nor was employee directed to report to another doctor for a personal examination. This procedure was the interpretation given by the Retirement Board to the language

in the statute. As this appeal revolves around these words we quote them. "[P]rovided the medical board, *after a medical examination of such member* [employee], shall certify that he is mentally or physically incapacitated for further performance of duty in the position he occupied at the time the disability originated, and that such incapacity is likely to be permanent and that he should be retired." Code Ann. § 40-2505 (3) (b). (Emphasis supplied.)

Upon receiving notification of this decision the employee through his attorney requested a formal hearing before the Retirement Board under the Administrative Procedure Act. In his letter (R. 67-70), the attorney took the position his client was not disabled and offered to submit him to a physical examination. It should be noted that throughout the proceedings the employee has contended he was not disabled and has offered to submit himself for a physical examination. This offer was repeated by his counsel during the oral argument in our court with the statement his client would abide by the results of such personal medical study.

In reply to this request his counsel was advised that this formal hearing as requested would not be held "since the Employees' Retirement System is not within the purview of the Adminstrative Procedure Act." (R. 61). This reply further stated that "It is not the intent of the Employees' Retirement System to act in any manner contrary to the statute governing the System nor contrary to the purposes of the retirement program" and went on to invite the attorney to the Retirement Board's next meeting "if you believe you have information concerning this matter which would be of value to the Retirement System or to the Trustees, or would like to discuss this matter with the Employees' Retirement System Board of Trustees on an informal basis." (R. 62).

Instead of accepting this invitation for an informal presentation and reconsideration plaintiff filed an appeal to the State Personnel Board to determine his status on the ground that he was being discriminated against in that he was being involuntarily separated without the benefit of a personal medical examination as required by the statute.

Prior to the hearing of this appeal by the State Personnel Board, employer filed a timely motion to dismiss appeal, together with a memorandum brief, based on the contention of employer that the Board lacks jurisdiction to review a medical decision of the

Medical Board of the Employees' Retirement System. (R. 25-31). Employer argued in its motion that employee was in the wrong forum and must directly attack a decision of the Board of Trustees of the Retirement System, rather than collaterally attacking it through the State Personnel Board.

In addition to denying employer's motion, the Personnel Board reinstated employee. It did so based on a stipulation that the three-member Medical Board of the Employees' Retirement System never had a physical examination made of the employee to pass on his contention that he was not disabled.

Employer then petitioned for a writ of certiorari to the Superior Court of Fulton County which was granted. The Fulton County Superior Court thereafter entered its judgment reversing the ruling of the Personnel Board. The court stated that the Personnel Board's interpretation of the medical examination provision of the Retirement System law was erroneous. The trial judge further construed this ruling by the Personnel Board to have been an attempt to review the actions of the Board of Trustees of the State Employees' Retirement System when it had no authority or jurisdiction to do so. Employee has brought this appeal from that judgment.

1. There was no offer to prove any internal rule of the State Retirement Board providing for an appellate division to hear disputes concerning its decisions and no appeals division is specifically provided for in Code Ann. Ch. 40-25. Accordingly, we must assume the Retirement Board's decision contained in its notice to Cantrell was its final adjudication. This is true even though in its desire to give fair treatment to the employee there was extended an invitation for attendance at the next meeting with an offer to reconsider on the basis of such evidence as might be then presented. Thus it is clear that plaintiff had exhausted his administrative remedy before the State Retirement Board.

2. Plaintiff could have appealed from the State Retirement Board's adverse ruling by certiorari to the superior court for determination of his contention that the statute required a personal medical examination rather than accept the unilateral three-man Medical Board's decision made from written data. *Scott v. Undercofler,* 108 Ga. App. 460 (133 SE2d 444); *Schaefer v. Clark,* 112 Ga. App. 806 (146 SE2d 318); *Gunther v. Gillis,* 114 Ga. App. 54 (150 SE2d 309). Or in the alternative he could as was done here appeal to the Personnel Board on grounds of discrimination. Since State employees habitually work through

the Personnel Board concerning any change of status, this was a logical step. The Personnel Board determined that plaintiff had not been effectively separated from his job and reinstated him on the basis that the complaint was within its jurisdiction. To handle complaints of unjust discrimination is one of its functions and in doing so it did not invade the jurisdiction of the Retirement Board.

3. If, as contended by the employer, the appeal had been for a review and reversal of the medical determination of the Retirement Board, then the State Personnel Board would have lacked jurisdiction. But that was not the ground of appeal. Employee did not question the right of the Retirement Board to act. He did allege discrimination in that he was not given the personal physical examination which he contended an employee in his position was entitled to receive before being involuntarily retired for disability. That brought the complaint properly before the Personnel Board. Inclusive among the Personnel Board's duties are provisions for "appointments, promotions, transfers, demotions, separations, tenure, reinstatement, appeals, reports of performance. . . and other phases of Merit System administration. Such rules and regulations. . . shall provide that there shall be no discrimination for or against any person or employee because of . . . age or physical handicap." Code Ann. § 40-2203 (b). The Personnel Board is empowered "To conduct hearings and render decisions on dismissals and other purported violations of the rules and regulations in the several departments which are included in the career service. . ." Code Ann. § 40-2203 (e).

Additionally, under Code Ann. § 40-2205: "No employee. . . may be dismissed from said department except for good cause as shall be specified in the rules and regulations of the State Personnel Board. . . . The decision of the Board on such an appeal as to whether or not the dismissal was for proper cause and in accordance with the rules and regulations prescribed by the Board shall be binding upon the appointing authority of the department dismissing such employee."

4. Plaintiff did not contest the State Retirement Board's right to require retirement involuntarily under Code Ann. § 40-2505 (3) (b). That Code Section provides "Any member in service may be retired by the board of trustees on a disability allowance upon written application to the board of trustees made by such member or his employer, not less than 30 days nor more than

90 days subsequent to the execution and filing thereof: Provided, such member has 15 or more years of creditable service, and provided the medical board, after a medical examination of such member, shall certify that he is mentally or physically incapacitated for further performance of duty in the position he occupied at the time the disability originated, and that such incapacity is likely to be permanent and that he should be retired." However, plaintiff does contend that this involuntary termination right is contingent on a personal examination and thus he contests the disability finding that the Medical Board ruled from the written data including a letter from his personal physician. He contends that the Medical Board acted erroneously in limiting its findings to the data submitted by the employer and offers to submit himself to a personal physical examination in contradiction of the written data.

The statute does not require that any one or all of the three physicians constituting the Medical Board personally make that examination. The statute creating the Medical Board of the Retirement System states that "The medical board shall arrange for and pass upon all medical examinations required under the provisions of this Chapter, and shall report in writing to the board of trustees its conclusions and recommendations upon all the matters referred to it." Code Ann. § 40-2508. That same Code Section says that "If required, other physicians may be employed to report on special cases." We thus find that the legislature empowered the Medical Board to arrange for personal medical examination of an employee in "special cases." Cantrell comes within that category of "special cases" in that he contests the finding of the Medical Board which limited its consideration to the data submitted by the employer.

From the evidence, it would appear that a report from plaintiff's personal physician was considered in the Medical Board's certification of disability. This report is not in the record before us but there is in our record a contest of this being supportive of the Board's determination, he arguing this states "There had been no significant deterioration of the physical condition of Mr. Cantrell." (R. 68). The Medical Board did not see plaintiff or arrange for a personal medical examination. Plaintiff was at work fulfilling his duties when he was notified of the proposed compulsory retirement.

That the legislature intended a personal physical examination and not a review of uncertified medical records or physician reports

is evident from its later definition and use of the same words "medical examination" in Section 5 of the same Code Section, Code Ann. § 40-2505. There it states "Once each year during the first five years following retirement of a member on a disability retirement allowance, and once in every three-year period thereafter, the board of trustees may require a disability beneficiary who has not yet attained retirement age to undergo a medical examination, such examination to be made at his place of residence or other place mutually agreed upon, by a physician or physicians designated by the medical board, and such a beneficiary may himself request such an examination." Furthermore, this medical examination is for the same person who was retired originally under Code Ann. § 40-2505 (3) (b), that being the examination notifying the board of the existence of the disability whereas the periodic examinations under Code Ann. § 40-2505 (5) are for the purpose of reaffirming the continuance of the disability.

The state contends that this physical examination by a physician is too costly. That may be true, but it is even more costly and certainly unjust to the State and all of its employees for the State Retirement Board to be paying compensation for a disability which may never have existed, or which may no longer exist, or which may have altered in degree sufficiently to change the employee's status.

Neither judicial homilies nor perennial preachments are needed for us to remember the place of the courts in the American checks-and-balances tripartite system. We do not have the right to make law nor to decide what in our opinion would be best for the welfare of our citizens. In making our decisions we must limit ourselves to interpretation of the legislation being considered. This philosophy was well expressed thusly by our court in *Scott v. Undercofler*, 108 Ga. App. 460, 463 (133 SE2d 444): " '[The] value of Civil Service Reform is wholly dependent on whether the law and the evidence, without exception, are fairly and justly applied by the Board of Civil Service Commissioners, and in the courts with an even hand freely and fearlessly enforced. We do not pass on the expediency or wisdom of the law; our responsibility is that when a law is clear and free of ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit. . . . When the Board of Civil Service Commissioners is right the duty of a Court is to keep it right, and when wrong to place it right.' Boucher v. Department of Labor,

226 La. 227, 234 [75 S2d 343]."
5. The Retirement Board erred in its procedure here in seeking to retire plaintiff involuntarily without conforming to the statutory prerequisite for such act; namely, having plaintiff examined personally as a basis for the Medical Board's report to the Retirement Board. "The courts are not the architects of administrative procedure but they do assure that basic procedural protections are not improperly denied." Kenneth Culp Davis, Administrative Law, p. 167.

*Judgment reversed. Hall, P. J., and Evans, J., concur.*

Argued May 7, 1973 — Decided June 21, 1973 — Rehearing denied July 25, 1973 — 

*Harrison & Garner, G. Hughel Harrison,* for appellant.
*Arthur K. Bolton, Attorney General, Don A. Langham, Carl C. Jones, III, Assistant Attorneys General,* for appellee.